JOSEPH T. BUXTON, III, ET AL.

V.

ROGER A. MURCH, ET AL.

Record No. 941046

April 21, 1995

Present: All the Justices

J. Gray Lawrence, Jr. (Howell, Daugherty, Brown & Lawrence, on brief), for appellants.

Roger G. Hopper for appellees.

JUSTICE LACY delivered the opinion of the Court.

In this dispute between neighboring landowners, we consider whether an easement providing a right-of-way to the Rappahannock River was an express easement, whether the location of the easement changed with the consent of the parties, and whether use of the easement was restricted to non-waterfront property owners.

Joseph T. Buxton, III, and Mary Wakefield Buxton (the Buxtons) own Lots 20 and 21 of the Richardson subdivision in the Town of Urbanna. These lots are located between the Rappahannock River and Kent Street. Roger A. Murch and Ursula B. Murch (the Murches) own property on the south side of Kent Street. Their property is a non-waterfront lot located across the street from the Buxtons' property. This dispute centers on the use of a lot adjoining the Buxtons' property to the west. The Buxtons use the adjoining lot as a driveway and the Murches seek to use it as access to the river.

The Buxtons filed a bill of complaint against the Murches seeking to establish that they had title to the property adjoining their land through adverse possession or, alternatively, that they had acquired a prescriptive easement over the property. The Buxtons also sought to permanently enjoin the Murches from interfering with their use of the adjoining lot.

The Murches filed an answer and cross-bill claiming that they and other non-waterfront property owners had an easement across the property for access to the Rappahannock River. The matter was referred to a commissioner in chancery. At the commissioner's hearing, the Buxtons abandoned their claims of adverse possession and prescriptive easement rights and the parties agreed that title to the property underlying the claimed easement was "beyond the ambit of this case." The parties stipulated to a num-

ber of facts and the admission of a number of documents and photographs, but no witnesses testified.

The commissioner issued a report finding that a 1939 court decree expressly reserved a private right-of-way to the river over the disputed property for the benefit of owners of lots on Obert Avenue, Kent Street, and Elliott Street. The commissioner further found that the easement had shifted with the implied consent of the parties from the location originally intended in the 1939 grant to its present location. The trial court overruled the exceptions to the report filed by the Buxtons and entered a decree confirming the commissioner's report. The decree established an easement in favor of "non-waterfront lots or parcels lying on Obert Avenue, Kent Street and Elliott Street in the Richardson Subdivision in the Town of Urbanna" and permanently enjoined the Buxtons and their successors in title from using the easement or impeding the use and enjoyment of the easement by those landowners entitled to its use.

On appeal, the Buxtons argue that the trial court erred in confirming the commissioner's findings, in restricting the use of the easement to non-waterfront property owners, and in entering a permanent injunction against the Buxtons. The Buxtons further assert that the trial court erred in entering its decree without having all necessary parties before the court.

The evidence pertinent to our consideration of the issues in this appeal is undisputed. It begins with the history of the easement at issue. In 1937, J.B. Taliaferro, Jr., surveyed a large parcel of riverfront property owned by Mrs. Ethel H. Richardson. This survey laid out and numbered approximately 100 subdivision lots and four streets: Obert Avenue, Kent Street, Elliott Street, and Rappahannock Avenue. In 1938, Mrs. Richardson was declared incompetent and her committee, R.B. Segar, brought suit to sell enough of the property owned by Mrs. Richardson to pay her debts. On February 1, 1939, the circuit court entered a decree confirming the sale of some of Mrs. Richardson's property and, because the proceeds from this sale did not satisfy all her creditors, the court appointed Lewis Jones as special commissioner to sell Mrs. Richardson's land as shown on the Taliaferro survey. The decree specifically excluded from the sale certain lots which were already under contract of sale and further provided that Lot 22 "is reserved for a right of way for the owners of lots on Obert Avenue, Kent Street and Elliott Street to the Rappahannock

River." The property was purchased by C.W. Eastman and, by order entered on March 22, 1939, the circuit court directed Jones to execute a deed to Eastman.

The Taliaferro survey depicted the boundary lines of the waterfront lots running from the river to Kent Street as intersecting with the river at a slight angle. In subsequent surveys of these lots by W.H. Stiff in 1948 and 1952,[1] the boundary lines running from the river to Kent Street were altered. Rather than intersecting the river at a slight angle, they were drawn as perpendicular to the river. In addition, the 1952 survey did not contain any lot designated as "Lot 22," but instead showed a 30-foot "STREET" between the river and Kent Street in the general location of Lot 22 on the Taliaferro survey.[2]

Regardless of the location of Lot 22 or the "STREET" as reflected in the various surveys, the parties agree that from 1940 to 1984, the right-of-way on the ground that was actually used by various non-waterfront property owners to access the river was over the "STREET" depicted on the 1948 and 1952 Stiff surveys. The waterfront lot owners to the east of the "STREET," including the Buxtons, have used their property in accord with the boundaries as shown on the 1952 Stiff survey. In 1984, the Buxtons apparently prohibited use of the "STREET" by others. In 1990, when the Murches purchased their property, they attempted to use the "STREET" as access to the river.

1.

The Buxtons first challenge the determination that an express easement was created in 1939. They argue that the reservation of the easement across Lot 22 was contained only in the February 1, 1939 "interlocutory decree" appointing Jones as special commissioner to sell the land. Neither the March 22, 1939 decree confirming the sale to Eastman nor the March 23, 1939 deed from Jones to Eastman mentions the easement or Lot 22. Therefore, the Buxtons argue that Eastman never acquired title to Lot 22 or an easement over Lot 22. Consequently, the Buxtons conclude, Eastman could not give his successors in interest an easement over

---

[1] The 1952 survey was actually a retracing of the 1948 survey.

[2] Stiff prepared another survey in 1953 apparently reflecting the original angled boundary lines between the river and Kent Street as shown on the Taliaferro survey. The new survey contained a Lot 22 coterminous with the "STREET" located to the east apparently in the location of Lot 22 on the Taliaferro survey.

Lot 22. Finally, the Buxtons note that none of the subsequent deeds to property shown on the Taliaferro survey contained such a grant or reservation.[3] We disagree with the Buxtons' premise.

The failure to include specific language granting an easement in the March 22, 1939 decree or March 23, 1939 deed does not preclude a finding that an express reservation of easement over Lot 22 was created by the February 1, 1939 court decree. The Code, both in 1939 and presently, provides that a court engaged in selling the land of an incompetent has the authority to make such disposition of the land as is "right and equitable" so long as the disposition promotes the interests of the incompetent. Code § 8.01-68. *See also* Code § 5335 (1936). Thus, the circuit court had the authority to impose a right-of-way over a portion of Mrs. Richardson's land if the imposition of the right-of-way was in her best interests.

In 1939, Mrs. Richardson's committee had to sell her property to pay her debts. As the commissioner in this case observed:

The Chancellor in 1939, however, was not adjudicating the existence or non-existence of an easement, but was selling land, and was doing so for an incompetent grantor. He reserved the right-of-way for the benefit of the landlocked properties in order to increase the net value of the entire parcel, quite properly encouraging the highest and best use of the land and acting in the interest of the incompetent grantor's estate.

We conclude that the court's action in 1939, reserving a right-of-way over Lot 22, was within its authority and complied with statutory requirements for selling land of an incompetent person.

Furthermore, the right-of-way established was an express rather than implied easement. The right-of-way itself was clearly set out in the February 1, 1939 decree, both as to its location and as to those who were entitled to use it - "lot no. 22 which is reserved for a right of way for the owners of lots on Obert Avenue, Kent Street and Elliott Street to the Rappahannock River." Considering this description, we think it defies logic to say that the right-of-way was created by implication rather than by express grant. The regular use of that general area as access to the river

---

[3] The 1952 Stiff plat was only used in conjunction with sales of waterfront lots such as Lots 20 and 21, presently owned by the Buxtons.

was the result of the right-of-way described and established in the 1939 decree; the use itself did not create the easement.

■ In addition to the use of the property as an easement, subsequent treatment of the land was consistent with the court's creation of an express easement. The omission of any specific reference to Lot 22 in the March 29, 1939 decree confirming the sale of Richardson's land and in the deed itself, and the reference in subsequent surveys to the area formerly designated as Lot 22 as a "STREET," reflect that the February 1, 1939 decree did, and was understood to, encumber Lot 22 with an express easement.[4]

2.

■ The location of the easement on the ground at the present time and throughout its use is undisputed. The actual area used as access to the river has been that area designated as "STREET" on the 1952 Stiff survey, not Lot 22 as shown on the Taliaferro survey. This shift, however, does not defeat the easement:

> Even where there has been a definite location of an easement, it may be changed with the express or implied consent of the persons interested. Such consent may be implied from the acts and acquiescence of the parties, and an estoppel to claim a former location to be the true one arises from acquiescence in the change.

*Wagoner v. Jack's Creek Coal Corp.*, 199 Va. 741, 746, 101 S.E.2d 627, 630 (1958). Here, the evidence is clear that there was never any objection to or question about use of the right-of-way as depicted by the 1952 Stiff survey. The Buxtons' chain of title itself relies on this survey and they cannot now be heard to complain about the present location of the easement. The trial court correctly held that the easement established in 1939 is now located across the land designated as "STREET" on the 1952 Stiff survey.

---

[4] Because the question of title to the property underlying the right-of-way was specifically excluded as an issue in this case, we do not determine whether Lot 22 was conveyed by the 1939 deed to Eastman.

3.

The Buxtons also charge that all necessary parties were not before the court and, therefore, that the court did not have jurisdiction to enter its decree. On brief, the Buxtons identify two categories of necessary parties. First, the Buxtons maintain that the owners of Lot 23 on the Taliaferro survey, to the west of the "STREET" as shown on the Stiff surveys, are necessary parties. This argument is based on the premise that the "STREET" overlaps Lot 23 and, therefore, locating the easement on the "STREET" impacts the rights of these property owners. However, the 1952 Stiff survey, not the 1937 Taliaferro survey, apparently was the survey used in the chain of title for the owners of Lot 23. Therefore, the location of the easement in the "STREET" as shown in the 1952 Stiff survey does not affect the boundaries of Lot 23 or the rights of the owners of that lot.[5]

Second, the Buxtons claim that all the remaining non-waterfront property owners in the Richardson subdivision whose lots are located on Obert Avenue, Kent Street, and Elliott Street are necessary parties to this litigation. These owners are necessary, the Buxtons contend, because, with the benefit of the easement obtained in this litigation "came the duty, which all such owners shared, to maintain the easement."

A necessary party is one who has an interest in the subject matter of the litigation which is likely to be defeated or diminished by the litigation. *Raney v. Four Thirty Seven Land Co.*, 233 Va. 513, 519, 357 S.E.2d 733, 736 (1987). The requirement that such a party be joined in the litigation is "designed to prevent a multiplicity of litigation and to avoid depriving a person of his property without giving that person an opportunity to be heard." *Allen v. Chapman*, 242 Va. 94, 100, 406 S.E.2d 186, 188 (1991). The potential duties of maintaining the easement at issue in this case simply do not constitute an interest which is likely to be defeated or diminished. Furthermore, even if such duties qualified these lot owners as necessary parties, their joinder would not be required because of the difficulty in doing so and because their interests are identical to those of the Murches and are sufficiently

---

[5] The Buxtons also argue that whether title to Lot 22 passed to Eastman or remained in Richardson by virtue of the 1939 deed impacts on the issue of necessary parties. We do not address this issue, however, because, as stated before, the parties have stipulated that title to the property underlying the easement is not before us in this case.

represented by the Murches. *McDougle v. McDougle*, 214 Va. 636, 637, 203 S.E.2d 131, 133 (1974).

4.

Finally, the Buxtons assert that the trial court erred in limiting the use of the easement to non-waterfront property owners and entering an injunction prohibiting the Buxtons from using or interfering with the use of the easement. We agree.

 Although the original reason cited by the commissioner for recommending the reservation of an easement across Lot 22 in 1939 was to allow access to the river by owners of non-waterfront lots, the language in the decree reserving the easement stated that it was for "the owners of lots on Obert Avenue, Kent Street and Elliott Street" without distinction between waterfront and non-waterfront lots. Accordingly, we conclude that the easement is for the benefit of all lot owners on the named streets, including the Buxtons.

 In summary, for the reasons stated, we will affirm in part the judgment of the trial court, reverse and annul that portion of the judgment that restricts the use of the easement to owners of non-waterfront lots and that portion of the injunction which prohibits the Buxtons and their successors from using the easement, and enter final judgment here.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*