COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Willis and Clements
Argued at Richmond, Virginia


JOSEPH T. BUXTON, III, AND
 MARY WAKEFIELD BUXTON

                                   MEMORANDUM OPINION[*] BY
v.    Record No. 1805-01-2        JUDGE JEAN HARRISON CLEMENTS
                                         JULY 2, 2002
ROGER A. MURCH AND
 URSULA B. MURCH


           FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
                Ernest P. Gates, Judge Designate

          J. Gray Lawrence, Jr. (Faggert & Frieden,
          P.C., on briefs), for appellants.

          Roger G. Hopper for appellees.


     Joseph T. Buxton, III, and Mary Wakefield Buxton appeal

from a final decree of the trial court holding them in civil

contempt of court and awarding Roger A. Murch and Ursula B.

Murch $10,283.25 for their attorney's fees and costs expended as

a result of the Buxtons' contemptuous conduct.  On appeal, the

Buxtons contend the trial court erred in (1) finding them in

contempt and (2) awarding the Murches their attorney's fees and

costs.  For the reasons that follow, we affirm the trial court's

judgment.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as necessary to the parties' understanding of the disposition of this appeal.

I.  BACKGROUND

On March 18, 1994, the trial court entered a final decree in a dispute between the Buxtons and Murches affirming the report of the commissioner in chancery dated November 1, 1993.  That decree established the existence of an appurtenant easement, which had been created by court decree in 1939, over the "Street" depicted on the 1952 Stiff survey plat "as a right-of-way to the Rappahannock River" in favor of the Murches' non-waterfront property on Kent Street and "all other non-waterfront lots or parcels on Obert Avenue, Kent Street and Elliott Street in the Richardson Subdivision in the Town of Urbanna."  The 1994 decree also permanently enjoined the Buxtons, the owners of the waterfront property adjoining the "Street" to the east, from using the easement and from "denying, impeding or otherwise hindering in any manner or way the use and enjoyment of said easement by the owners of said non-waterfront lots."

On appeal, the Supreme Court affirmed the trial court's judgment that an express easement had been created by court decree in 1939 and that "the easement established in 1939 is now located across the land designated as 'Street' on the 1952 Stiff survey."

-

Buxton v. Murch, 249 Va. 502, 508, 457 S.E.2d 81, 84-85 (1995).

The Supreme Court did, however, "reverse and annul that portion of the [trial court's] judgment that restrict[ed] the use of the easement to owners of non-waterfront lots and that portion of the injunction which prohibit[ed] the Buxtons and their successors from using the easement."  Id. at 510, 457 S.E.2d at 85.

On July 24, 2000, the Murches filed a verified "Petition for Show Cause Order for Contempt" against the Buxtons for interfering with their use of the easement.  The Buxtons moved for a bill of particulars, which the Murches filed.  After viewing the subject property, hearing evidence ore tenus, and considering the arguments of counsel, the trial court entered a final decree on June 21, 2001, setting forth the permissible uses of the express easement by the Murches and other qualified lot owners and finding that the Buxtons had "denied the Murches the use of the Easement."

Specifically, the court ruled

> [t]hat the Murches and the Lot Owners [had]
> the unhindered and unobstructed right to use
> the Easement to boat, to swim, and to use the
> River for lawful purposes; they [had] the
> right to drive vehicles across the Easement,
> the right to park vehicles on it for thirty
> (30) minutes at a time, the right to
> construct a walkway and/or stairs down the
> bank and over the riprap that the Buxtons
> installed which prevents people from safely
> accessing the River, and the right to put a
> platform there for the launching and
> retrieving of small boats—subject to all
> necessary governmental permits.

-

The trial court then found the Buxtons had

> taken complete control of the Easement for
> their own use, . . . set a basketball goal in
> concrete upon it, . . . extended their yard
> over it and planted flowers and shrubs on it,
> regularly park[ed] their vehicles on it,
> . . . caused feces to collect upon it, and
> . . . completely confiscated the use of the
> Easement from the Murches.

Accordingly, the court held the Buxtons in contempt and ordered them to pay the Murches $10,283.25 to cover the attorney's fees and costs incurred by the Murches as a result of the Buxtons' failure to comply with the court's injunction.  This appeal followed.

## II.  FINDING OF CONTEMPT

"Where the court's authority to punish for contempt is exercised by a judgment rendered, its finding is presumed correct and will not be reversed unless plainly wrong or without evidence to support it."  Brown v. Commonwealth, 26 Va. App. 758, 762, 497 S.E.2d 147, 149 (1998).  On appeal, we view the evidence in the light most favorable to the Murches, the parties prevailing below. See Hayes v. Aquia Marina, Inc., 243 Va. 255, 257, 414 S.E.2d 820, 821 (1992); Glanz v. Mendelson, 34 Va. App. 141, 148, 538 S.E.2d 348, 351-52 (2000).

The Buxtons advance several arguments, on appeal, in support of their claim that the trial court erred in finding them in contempt.  They first argue that, because the trial court's 1994 decree enjoining them from interfering in the use of that easement

-

as a right-of-way to the Rappahannock River "did not explicitly . . . prohibit specific conduct and failed to clearly define the duties or obligations imposed on" them, it may not serve as the basis for a finding of contempt. The 1994 decree, the Buxtons assert, did not indicate how the owners of non-waterfront lots were entitled to use and enjoy the subject right-of-way to access the Rappahannock River.[1] Hence, the Buxtons argue, the decree did not make clear what use and enjoyment of the easement the Buxtons were prohibited from "denying, impeding or otherwise hindering." Accordingly, they conclude, the 1994 decree is not "a proper foundation for a contempt proceeding."

We find the Buxtons' premise erroneous. While it is true generally that, "in instances where [an] order does not explicitly direct, mandate or prohibit specific conduct, it is insufficient to sustain a finding of contempt," Mardula v. Mendelson, 34 Va. App. 120, 128, 538 S.E.2d 338, 342 (2000), here, the 1994 decree, as modified by the Supreme Court, explicitly proscribed specific conduct. As modified, it expressly prohibited the Buxtons from "denying, impeding or otherwise hindering in any manner or way the use and enjoyment of [the] easement by the owners of [the appropriate] lots." The decree established the easement "over and

---

[1] The Buxtons concede the Murches have the right to use the easement to access the Rappahannock River by foot and insist they have not interfered with that right. The Buxtons argue, however, that the Murches' rights in the easement do not extend to driving cars and trucks on the easement.

-

across the 'Street' as shown on [the 1952 Stiff survey plat] as a right-of-way to the Rappahannock River."  The 1952 Stiff survey plat not only identified the parcel over which the easement runs as a "Street," it depicted the "Street" as being thirty feet wide and connecting Kent Street, an existing road in the Richardson Subdivision, to the Rappahannock River.  Furthermore, nothing in the decree or referenced plat restricted the use of the easement to foot traffic.  See Cushman Corp. v. Barnes, 204 Va. 245, 253, 129 S.E.2d 633, 639 (1963) (holding that "[w]hen a right of way is granted over land . . . and the instrument creating the easement does not limit the use to be made thereof, it may be used for any purpose to which the dominant estate may then, or in the future, reasonably be devoted").

We hold, therefore, that, because it was identified on the survey plat as being thirty feet in width and a roadway, rather than a path, trail, or walkway, for example, the easement established by the 1994 decree was clearly intended to accommodate general vehicular traffic, including motor vehicles, as well as foot traffic.  No other construction of the decree is reasonably possible.  Accordingly, we hold that the 1994 decree is sufficiently explicit, in terms of setting forth the specific conduct from which the Buxtons are enjoined, to serve as a basis for a finding of contempt.

-

The Buxtons further argue that the evidence presented to the trial court was insufficient to prove that the Buxtons were guilty of civil contempt. We disagree.

In determining whether the Buxtons had violated the 1994 decree, the dispositive issue before the trial court was whether the Buxtons had denied, impeded, or hindered "in any manner or way the use and enjoyment" of the designated easement by the Murches. The record established that the Buxtons routinely parked their vehicles on the easement, planted flowers, shrubs, and trees across the easement, and placed a basketball goal in concrete on the easement, all of which blocked the Murches from using the easement to access the Rappahannock River by car or truck. We find that this evidence supports the trial court's finding that the Buxtons violated the injunction. We hold, therefore, that the evidence was sufficient, as a matter of law, to prove the Buxtons were in contempt of court.

The Buxtons also argue that the trial court erred in concluding that the title to the land underlying the easement was irrelevant to the issue of whether the Buxtons were in contempt of court. We disagree.

As the Supreme Court noted in its opinion in this case, the parties stipulated at the commissioner's hearing "that title to the property underlying the claimed easement was 'beyond the ambit of this case.'" Buxton, 249 Va. at 504, 457 S.E.2d at 82. Indeed, the Buxtons acknowledged at the contempt hearing that the

-

title to the property underlying the easement was not at issue and concede on appeal that the title to the property was not at issue before the commissioner in chancery, the trial court, or the Supreme Court when the injunction in this case was entered and then modified on appeal.  Thus, the trial court, charged with determining whether the Buxtons were in contempt of court, correctly found that the issue of the underlying title was not relevant to the issue of contempt before it.

The Buxtons further argue the trial court erred "in going outside the bill of particulars in finding the Buxtons guilty of contempt."  We disagree.

In reviewing the record, we find that the trial court did not "go outside" the Murches' bill of particulars in finding the Buxtons in contempt of court.  The bill of particulars, as well as many of the exhibits attached to it, included numerous references to the Buxtons' "vehicles, basketball goal, and other obstructions" impeding the Murches' "free and unobstructed use of the right-of-way to the [river]."  The trial court based its finding of contempt on the fact that the Buxtons "set a basketball goal in concrete upon [the easement], . . . extended their yard over it and planted flowers and shrubs on it, regularly park[ed] their vehicles on it, [and] . . . caused feces to collect upon it."  Accordingly, we find that, in holding the Buxtons in contempt, the trial court did not "go outside" the allegations made by the Murches in the bill of particulars.

-

Finally, the Buxtons argue the trial court erred when, in construing the express easement at issue, it ruled the Murches and other lot owners had the right to park on the easement, to construct a walkway and stairs on it, "and, especially, to build beyond the right-of-way and into the river."  Similarly, the Buxtons contend the trial court erred in not granting their motion to enjoin the Murches from exercising such "expansive rights."

We first note that the decree entered by the trial court says nothing about building any structure "beyond the right-of-way and into the river."  Rather, in construing the express easement at issue, the trial court held that the Murches and other lot owners had the right, in using the easement to access the river, to drive on the easement, to park their vehicles for up to thirty minutes on the easement, "to construct a walkway and/or stairs down the bank and over the riprap that the Buxtons installed which prevents people from safely accessing the River, and . . . to put a platform there [i.e., "over the riprap"] for the launching and retrieving of small boats."[2]  (Emphasis added.)  Such a platform, built over the riprap, would not exceed the physical limits of the express easement, which is shown on the 1952 Stiff survey plat as extending fully to the river itself.  Accordingly, we need not further address the Buxtons' claim that the trial court erred in

_____

[2] The riprap was placed along the bank of the river to prevent erosion.

-

granting the Murches and other lot owners the right "to build beyond the right-of-way and into the river."

Likewise, having previously addressed the issue of driving on the easement, we need not repeat that discussion here.

Turning, then, to the Buxtons' argument that the trial court erred in permitting the lot owners to park and build structures on the easement, we observe that the applicable legal principle was stated in Hayes, 243 Va. at 258-59, 414 S.E.2d at 822, as follows:

> As a general rule, when an easement is created by grant or reservation and the instrument creating the easement does not limit the use to be made of it, the easement may be used for "any purpose to which the dominant estate may then, or in the future, reasonably be devoted." Cushman Corporation v. Barnes, 204 Va. 245, 253, 129 S.E.2d 633, 639 (1963). Stated differently, an easement created by a general grant or reservation, without words limiting it to any particular use of the dominant estate, is not affected by any reasonable change in the use of the dominant estate. Savings Bank v. Raphael, 201 Va. 718, 723, 113 S.E.2d 683, 687 (1960) (citing Ribble, 1 Minor on Real Property § 107, at 146 n.2 (2d ed. 1928)). However, no use may be made of the easement which is different from that established at the time of its creation and which imposes an additional burden upon the servient estate. Cushman Corporation, 204 Va. at 253, 129 S.E.2d at 639-40.

Here, neither the 1939 decree creating the original easement for access to the Rappahannock River nor the 1994 decree establishing the easement for access to the river over the "Street" depicted on the 1952 Stiff survey plat contained terms of

-

limitation as to the easement's use.  Likewise, both instruments clearly indicated that the easement was intended to allow the lot owners in the Richardson Subdivision to access the river.  In addition, the record reflects that the easement was historically used by the lot owners in the subdivision to access the river for recreational purposes, until, as the Supreme Court noted, "[i]n 1984, the Buxtons apparently prohibited use of the "Street" by others."  Buxton, 249 Va. at 506, 457 S.E.2d at 83.

Furthermore, the evidence presented supports the conclusion that the parking of vehicles on the easement for up to thirty minutes as well the construction of a walkway, stairs, and platform down the bank and over the riprap are reasonable uses of the easement for the purpose of accessing the river.  As the trial court noted, parking for thirty minutes would allow those accessing the river time to unload their boats or supplies without overburdening others' use of the easement.  Additionally, the stairs, walkway, and platform would allow the users of the easement to safely access the river over the hazardous riprap along the bank of the river.

The evidence further supports the conclusion that the construction of the walkway, stairs, and platform would "not, 'in and of itself,' impose an 'additional burden' upon the easement, even though the 'degree of burden' may be increased." Hayes, 243 Va. at 260, 414 S.E.2d at 823 (quoting Cushman Corporation, 204 Va. at 253, 129 S.E.2d at 640).  Accordingly,

-

such improvements to the easement are permissible.  See id. at 261, 414 S.E.2d at 823 (holding that "the owner of a dominant estate has the right to make reasonable improvements to an easement, so long as the improvement does not unreasonably increase the burden upon the servient estate").

For these reasons, we hold that the trial court did not err in construing the easement established by the 1994 decree as allowing the Murches and other lot owners to park their vehicles for up to thirty minutes on the easement and to build a walkway, stairs, and a platform on the easement in order to safely access the river.  Because such uses of the easement are permissible, we further hold the trial court did not err in denying the Buxtons' motion to enjoin those uses.

### III.  ATTORNEY'S FEES AND COSTS

The Buxtons contend the trial court erred in awarding the Murches attorney's fees and costs.  They argue, firstly, that "[n]o sanctions should have been awarded against them" because they did not violate a court order and, secondly, that the fee application of the Murches' counsel was "insufficient as a matter of law."  We disagree with both arguments.

Having affirmed the trial court's finding that the Buxtons violated the trial court's 1994 decree, as modified by the Supreme Court, we need not address the Buxtons' first argument, except to note that the trial court "was justified in imposing sanctions on [the Buxtons] by awarding counsel fees to [the

-

Murches] in order to indemnify [them] for the expenses incurred in investigating and prosecuting the contempt proceeding and to restore the status quo as far as possible." Arvin, Inc. v. Sony Corp. of America, 215 Va. 704, 706, 213 S.E.2d 753, 755 (1975).

With regard to the Buxtons' second argument that the fee application of the Murches' counsel was "insufficient as a matter of law," we find that the evidence in the record supports the trial court's award of attorney's fees and costs. The trial court clearly indicated in its ruling from the bench that its award would comprise "the costs that the Murches have expended and will expend as a result" of the Buxtons' contemptuous conduct. At the court's direction, counsel for the Murches submitted an affidavit of the Murches' attorney's fees and costs along with a detailed summary showing the time, effort, and expenses he spent investigating and prosecuting the proceedings directly resulting from the Buxtons' violation of the injunction. Upon considering the affidavit and summary, and counsel's argument and representations related thereto, the trial court awarded the Murches $10,283.25. We conclude that there was, as a matter of law, sufficient evidence presented "upon which [an] able and experienced trial judge could arrive at a reasonable fee." Id. at 707, 213 S.E.2d at 755.

Accordingly, we will affirm the trial court's decree finding the Buxtons in civil contempt of court and awarding the Murches

-

their attorney's fees and costs expended as a result of the Buxtons' contemptuous conduct.

<u>Affirmed.</u>