COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Felton and Senior Judge Coleman
Argued at Richmond, Virginia


JOSEPH T. BUXTON, III AND
 MARY WAKEFIELD BUXTON
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2026-03-2                      JUDGE SAM W. COLEMAN III
                                                          MAY 18, 2004
ROGER A. MURCH AND
 URSULA B. MURCH


                FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
                         Ernest P. Gates, Judge Designate

                J. Gray Lawrence, Jr. (Faggert & Frieden, P.C., on briefs), for
                appellants.

                Roger G. Hopper for appellees.


        Joseph T. Buxton, III and Mary Wakefield Buxton, appellants, appeal a decision of the trial

court finding that its June 21, 2001 decree "included as a part of the Buxtons' contempt

[sanctions] all of the Murches' future costs and attorney's fees occasioned by the Buxtons

conduct herein," and its mandate for the Buxtons to pay the Murches $8,149.08.  We hold that

the actual expenses incurred by the Murches in enforcing the contempt citation against the

Buxtons, including the costs for attorneys' fees in defending the Buxtons' appeal of the contempt

citation, are part of the damages suffered as a result of the contempt and may be included by the

trial court as part of the sanctions.  Accordingly, we affirm the decision of the trial court.

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

The Buxtons own property on the north side of Kent Street in the town of Urbanna. Their property fronts the Rappahannock River. A thirty-foot wide easement or street runs along the Buxtons' property, perpendicular to the river, and allows access to the river from Kent Street.

Roger A. Murch and Ursula B. Murch, appellees, own property on the south side of Kent Street. Their property does not adjoin the river.

On October 16, 1991, the Buxtons filed a bill of complaint asking the trial court to grant them exclusive use of the easement or street, which they have "used and maintained as a driveway." The Murches filed an answer and cross-bill asking the court to declare and determine the rights to the easement or street. On May 4, 1993, the trial court referred the matter to a commissioner in chancery. The commissioner conducted a hearing on September 3, 1993, and filed his report in the trial court on November 3, 1993.

By decree dated March 18, 1994, the trial court: (1) adopted, approved and confirmed the commissioner's report; (2) dismissed the Buxtons' bill of complaint; (3) established a permanent appurtenant easement in favor of the Murches "and all other non-waterfront lots or parcels lying on Obert Avenue, Kent Street and Elliott Street in the Richardson subdivision"; and (4) "permanently enjoined" the Buxtons from "using the said easement" or "denying, impeding or otherwise hindering in any manner or way the use and enjoyment of said easement by the owners of said non-waterfront lots."

The Buxtons appealed to the Supreme Court of Virginia. On April 21, 1995, the Supreme Court affirmed the trial court's ruling that an express easement was created. Buxton v. Murch, 249 Va. 502, 507-08, 457 S.E.2d 81, 84-85 (1995). However, the Court "annul[ed] that portion of the judgment that restrict[ed] the use of the easement to owners of non-waterfront lots and that portion

of the injunction which prohibit[ed] the Buxtons and their successors from using the easement."[1] Id. at 510, 457 S.E.2d at 85.

On July 24, 2000, the Murches filed a verified "Petition for Show Cause Order for Contempt" against the Buxtons for, *inter alia*, "repeatedly, willfully and deliberately obstruct[ing], imped[ing] and hinder[ing the Murches'] use and enjoyment" of the easement. The trial judge visited and viewed the easement and heard evidence and arguments. The trial court ruled that "the Easement created appurtenant rights to the owners of the Murch property and the properties of the [other] Lot Owners to use the Easement to go to the Rappahannock River . . . to boat, to swim, and to use the River as they wanted to use it." By decree dated June 21, 2001, it found that the Buxtons had

> taken complete control of the Easement for their own use, have set a basketball goal in concrete upon it, have extended their yard over it and planted flowers and shrubs on it, regularly park[ed] their vehicles on it, have caused feces to collect upon it, and have completely confiscated the use of the Easement from the Murches.

It then found the Buxtons "in contempt of this court for such continuous violations of the Injunction." In its decree, the trial court ruled, as follows:

> As sanctions for their contempt, the Buxtons shall forthwith pay unto the Murches the total costs of these proceedings, including the amount of attorney's fees and other costs that the Murches have expended since the Virginia Supreme Court decision and will expend as a result of the Buxtons' conduct.
> Affidavit having been filed by the Murches' counsel as to their attorney's fees and costs herein, the court further ADJUDGES, ORDERS and DECREES that the sum of $9,451.00 as attorney's fees, and $832.25 as costs be forthwith paid by the Buxtons to the Murches.

---

[1] Significantly, in annulling "that portion of the injunction" prohibiting the Buxtons from "using the easement" like the other affected landowners, the Supreme Court did not eliminate or annul that portion of the injunction that prohibited the Buxtons from "denying, impeding or otherwise hindering in any manner or way the use and enjoyment of said easement" by other landowners.

The Buxtons appealed the "final decree of the trial court holding them in civil contempt of court and awarding [the Murches] $10,283.25 for their attorney's fees and costs expended as a result of the Buxtons' contemptuous conduct." Buxton v. Murch, Record No. 1805-01-2 (Va. Ct. App. July 2, 2002). By unpublished opinion, we affirmed the trial court's finding of contempt. Id. Concomitantly, we found "that the trial court 'was justified in imposing sanctions on [the Buxtons] and by awarding counsel fees to [the Murches] in order to indemnify [them] for the expenses incurred in investigating and prosecuting the contempt proceeding and to restore the status quo as far as possible.'" Id., slip op. at 12-13 (quoting Arvin, Inc. v. Sony Corp. of America, 215 Va. 704, 706, 213 S.E.2d 753, 755 (1975)). We further approved the detailed list of uses for the easement that the trial court felt constrained to put in writing to restrain the Buxtons from continuing to violate the earlier injunction and thereby prevent the Murches and other landowners from enjoying its use. We held that "the 1994 decree, as modified by the Supreme Court, explicitly proscribed" the Buxtons' contemptuous actions which denied the Murches and other affected landowners "'the use and enjoyment of [the] easement.'" Id., slip op. at 5. The final issue raised by the Buxtons and affirmed by this Court was the reasonableness of the trial court's sanction, namely the award of fees and costs necessarily expended by the Murches "as a result of the Buxtons' contemptuous conduct" as of the June 2001 hearing.

The Buxtons appealed our decision to the Supreme Court of Virginia. On December 17, 2002, the Supreme Court refused their petition for appeal. See Buxton v. Murch, Record No. 022035 (Va. Dec. 17, 2002).

On January 23, 2003, the Murches filed a petition in the trial court seeking an award of fees and costs expended by them in defending the Buxtons' unsuccessful appeals in this Court and in the Supreme Court of Virginia and in prosecuting their petition to obtain the amount expended in vindicating their rights under the 1994 decree and express easement.

On May 1, 2003, the trial court conducted a hearing on the Murches' petition. The Buxtons argued, as they do on appeal, that the trial court lacked jurisdiction to render such an award and that it was improper to award as sanctions the additional attorney's fees and costs.

The trial court determined it had jurisdiction to hear the matter, and it ruled "that the [June 2001] decree provided for future expenses as well as [past funds] expended as a result of the Buxtons' conduct." Consequently, it directed the Murches to gather and submit documentation for fees and expenses incurred.

On July 10, 2003, after reviewing the documented expenses and costs, the trial court entered a decree directing the Buxtons to pay the Murches $8,149.08, the amount of money the Murches were required to expend since the June 21, 2001 decree to enforce the injunction, and to vindicate their right to use and enjoy the easement.

## ISSUE I: JURISDICTION

The Buxtons contend "the trial court did not have jurisdiction to award additional fees and costs." They argue the trial court was divested of its jurisdiction twenty-one days after it entered its June 21, 2001 decree, thus, "it would have been, and was, beyond the authority of the [trial] Court to modify that judgment."

"In the exercise of its equity jurisdiction, a court is afforded broad discretion in fashioning complete and just relief." Hooper v. Musolino, 234 Va. 558, 572, 364 S.E.2d 207, 214-15 (1988).

> "Equity has jurisdiction in cases of recognized rights, when a plain, adequate and complete remedy cannot be had in the courts of common law. The remedy must be plain; for if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate, for if at law it falls short of what a party is entitled to, that founds [sic] a jurisdiction in equity. And it must be complete; that is, it must attain the full end and justice of the case. It must reach the whole mischief, and secure the whole right of the party in a perfect manner, at the present time and in the future, otherwise equity will interfere and give such relief and aid as the particular

> case may require. The jurisdiction of a court of equity is therefore sometimes concurrent with the jurisdiction of a court of law; it is sometimes exclusive of it, and it is sometimes auxiliary to it."
>
> A remedy cannot be said to be fully adequate to meet the justice and necessities of a case unless it reaches the end intended, and actually compels a performance of the duty in question. Such other remedy, in order to constitute a bar to *mandamus,* must be adequate to place the injured party, as nearly as the circumstances of the case will permit, in the position, which he occupied before the injury or omission complained of.
>
> "The controlling question is not 'Has the party a remedy,' but is that remedy fully commensurate with the necessities and rights of the party under all circumstances of the particular case?"

McClaugherty v. McClaugherty, 180 Va. 51, 68-69, 21 S.E.2d 761, 768 (1942) (citations omitted).

The Buxtons either fail or refuse to understand the purpose and effect of the trial court's June 21, 2001 decree, and the nature of the July 10, 2003 decree. In the June 21, 2001 decree, the trial court directed the Buxtons to "forthwith pay unto the Murches the total costs of these proceedings, including the amount of attorney's fees and other costs that the Murches have expended since the Virginia Supreme Court decision *and will expend as a result of the Buxtons' conduct*." (Emphasis added.) In awarding the actual damages sustained by the Murches thus far, the trial court "adjudge[d], order[ed] and decree[d] that" the Buxtons "forthwith" pay the Buxtons $10,283.25, which the Murches submitted by affidavit was the money they were required to expend thus far in enforcing their right to use the easement.

Although the trial court directed the Buxtons to "forthwith pay" the money expended now and in the future, we find, in the context of the sanction imposed, that the use of the word "forthwith" applied to and was, therefore, limited to the costs expended up until that time. See Turner v. Commonwealth, 14 Va. App. 737, 740, 420 S.E.2d 235, 237 (1992) (explaining that the term "'[f]orthwith' is a practical and flexible standard which must conform to the necessities of circumstances"). Because the Buxtons had not, and could not have, elected to contest the

easement, injunction and finding of contempt at the time of the June 2001 decree, to further pursue litigation challenging the Murches' right to enjoy the easement decreed in 1994, the trial court could not at that time speculate and award future damages that might be incurred by the Murches due to the Buxtons' contempt.

Moreover, although they appealed to this Court the trial court's 2001 finding of civil contempt and the reasonableness of the fees and costs requested and allowed, the Buxtons never appealed that portion of the trial court's sanction which also awarded to the Murches the costs that they "*will expend* as a result of the Buxtons' conduct." (Emphasis added.) That directive became the law of the case. See American Filtrona Co. v. Hanford, 16 Va. App. 159, 164, 428 S.E.2d 511, 514 (1993) ("Where there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal, right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either.").

In its May 1, 2003 decree, the trial court merely implemented its 2001 order and imposed the appropriate sanction after it determined the further damage that the Murches had incurred as a result of the Buxtons' contempt. Accordingly, the trial court had jurisdiction to impose the sanction when that additional expense had been incurred.

## ISSUE II: IMPROPER SANCTION

The Buxtons also contend the trial court improperly imposed attorney's fees and costs as a sanction merely for exercising their right to appeal. They argue that sanctions for civil contempt are only available for past acts of disobedience, and there is no evidence "that the Buxtons violated any decree binding on them after entry of the 2001 Decree." In other words, the Buxtons posit that the trial court "could not properly award sanctions for acting properly."

Again, the Buxtons fail to recognize the purpose of the May 1, 2003 hearing, namely, to implement the sanction imposed by its June 2001 contempt decree.

> "A proceeding for civil contempt partakes more of the nature of a remedial civil proceeding than . . . a criminal proceeding. Its main purpose is to procure the imposition of a punishment which will afford remedial relief to the parties injured by the violation of the injunction. Not only is the proceeding instituted at the instance of the injured parties, but they are parties to it; and it is properly instituted and tried as a part of the injunction suit. *In contempt proceedings of this nature the punishment . . . imposed is not limited to a fine and/or imprisonment. . . . In appropriate cases the violator may be punished by . . . an award of damages against him in favor of the injured party sufficient to indemnify him for the pecuniary loss occasioned to him as a result of the act or omission which violated the injunction having injured or damaged property or rights which he was entitled to have protected or preserved by the injunction.*"

Leisge v. Leisge, 224 Va. 303, 308, 296 S.E.2d 538, 540-41 (1982) (quoting Deeds v. Gilmer, 62 Va. 157, 262, 174 S.E. 37, 78-79 (1934)).

> "Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. . . . Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. The decree [is] not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents."

Id. at 309, 296 S.E.2d at 541 (citation omitted).

Thus, the punishment or sanction "in a civil contempt proceeding 'is adapted to what is necessary to afford the injured party remedial relief for the injury or damage done by the violation of the injunction to his property or rights which were under the protection of the injunction.'" Rainey v. City of Norfolk, 14 Va. App. 968, 974, 421 S.E.2d 210, 214 (1992) (quoting Deeds, 162 Va. at 262, 174 S.E. at 78-79); see also Bagwell v. International United Mine Workers of America, 244 Va. 463, 475, 423 S.E.2d 349, 356 (1992) (explaining that

"'[c]ompensatory, civil contempt sanctions compensate a plaintiff for losses sustained because a defendant disobeyed a court's order").

We are aware of "[t]he general rule in this Commonwealth . . . that, in the absence of a provision in a statute, rule, or contract to the contrary, a trial court may not award attorney's fees to a party merely on the basis of that party's having prevailed upon an issue or cause." Tonti v. Akbari, 262 Va. 681, 685, 553 S.E.2d 769, 771 (2001) (citations omitted).

> This is the so-called "American Rule," and its purpose is to avoid stifling legitimate litigation by the threat of the specter of burdensome expenses being imposed on an unsuccessful party.
> Where a rule or statute authorizes the trial court to impose the costs of litigation in the form of attorney's fees as a sanction against a party, such sanction is intended, in part, to protect litigants from the expense of frivolous claims, unfounded in fact or law. "'Yet the threat of a sanction should not be used to stifle counsel in advancing novel legal theories or asserting a client's rights in a doubtful case.'" In short, far from being "a routine matter," an award of attorney's fees as a sanction is a matter that must be made under proper authority and with due exercise of the trial court's sound judicial discretion.

Id. (citations omitted). See also Mullins v. Richlands Nat'l Bank, 241 Va. 447, 449, 403 S.E.2d 334, 335 (1991) (explaining general adherence to the Rule).

We recognize the general rule that, in the absence of a specific remand for attorney's fees, the trial court lacks jurisdiction to award appellate fees. O'Loughlin v. O'Loughlin, 23 Va. App. 690, 694-95, 479 S.E.2d 98, 100 (1996). However, the fact that an award of sanctions for actual expenses incurred in enforcing a contempt citation includes legal expenses and attorneys' fees did not transform contempt sanctions into a mere award of attorney's fees. Attorney's fees were a necessary expense incurred by the Murches to enforce the injunction in order that they could enjoy use of the easement. A court may award a party the reasonable and necessary or actual expenses incurred as a result of the opposing parties' violation of an injunction. Here, such damages were legal costs and attorneys' fees. See Lesege, 224 Va. at

308-09, 296 S.E.2d at 540-41 (upholding award of damages against contemnor in favor of injured party sufficient to indemnify him for pecuniary loss occasioned to him as a result of the act or omission which violated the injunction).

Contrary to the Buxtons' allegations, the trial court did not "modify" its June 2001 decree, nor was the sanction merely an award of attorney's fees. The trial court sanctioned the Buxtons by its May 1, 2003 decision by awarding the Murches compensation for the monies expended in enforcing the injunction and vindicating their rights. An award of actual costs and damages for civil contempt enforcement includes all reasonable expenses incurred in enforcing the civil contempt.

For the reasons stated, we affirm the trial court.

<u>Affirmed.</u>