## Richmond

### First National Trust & Savings Bank, Trustee, Etc. v. Louise G. Raphael, Et Al.

April 25, 1960.

Record No. 5051.

Present, All the Justices.

The opinion states the case.

*Samuel H. Williams*, for the appellant.

*William Rosenberger, Jr. (Perrow & Rosenberger*, on brief), for the appellees.

EGGLESTON, C. J., delivered the opinion of the court.

First National Trust & Savings Bank, trustee under the will of Minnie E. Knight, hereinafter referred to as the plaintiff, filed its bill in the court below against Louise G. Raphael and others, hereinafter referred to as the defendants, praying that the court "render a declaratory judgment with respect to the existence" of an easement to which the plaintiff's property is subject in favor of the property of the defendants, that the easement "may be cancelled and annulled," and that the plaintiff be "permitted to construct its building over the entire area of its said lot." The court entered a final decree sustaining a demurrer to and dismissing the bill and the plaintiff has appealed. The sole assignment of error is that the lower court erred in sustaining the demurrer.

These are the facts as alleged in the bill: The plaintiff owns a lot 15 by 132 feet on the southwestern side of Main street in the city of Lynchburg, improved by a three-story building covering the width of the lot and extending back 60 feet. The defendants own the adjoining lot to the west which is 21 feet wide and 132 feet deep and is improved by a three-story building which covers the entire lot. Both buildings are now rented for business purposes. The first floor of the defendants' property is used as a drugstore and the upper floors for the storage of goods and merchandise.

In 1847, Samuel McCorkle, who then owned the plaintiff's property, and Hamilton Boyd, who then owned the defendants' property, executed and recorded a deed the proper interpretation of which is the subject of this controversy. At that time Boyd used the ground floor of his building as a store and occupied the upper floors for a family residence. McCorkle was then preparing to erect a building on his lot adjoining the eastern wall of Boyd's house which McCorkle wished to utilize as a party wall for the limited depth of a part of his new building, called the "lesser tenement." By the terms of the deed Boyd gave McCorkle the right to use the party wall, "answering as a common wall to both houses, so far as the said lesser tenement extends back at this time," and agreed that the

Boyd wall and the lesser tenement of the McCorkle house "shall forever stand each to the other as they now do."

In consideration of the privilege thus given, McCorkle bound "himself, his heirs &c, never to erect in the rear of the said lesser tenement of his house (on the vacant space of ground now there) any buildings, improvements or other thing whatsoever, which will in any manner, or by any means whatsoever lessen, obstruct, impede or hinder the flow or use of light now enjoyed by said Boyd from that direction—or which will in the remotest degree darken his lights, apertures and windows, in that part of his house now occupied as a family residence." In addition, McCorkle agreed "that the rain water which now falls off said Boyd's house in the rear of said lesser tenement, shall, as it now does, continue to fall upon and also be carried off on said McCorkle's ground without hindrance or obstruction."

The bill alleges that the "tenants" who now occupy the building formerly owned by Boyd and now owned by the defendants "have long since abandoned the use of the same for residential purposes and utilize the upper floors for storage purposes alone, deriving no benefit whatever from the retained privilege of receiving light over" the plaintiff's vacant lot. It also alleges that "daylight and sunlight derived through window openings" next to the plaintiff's lot have "become an obsolete source of illumination and have fallen into disuse and the privilege is of no value to" the defendants. Since, the bill alleges, this easement of light was created "for the particular purpose of adapting" the upper floors of the defendants' property "to residential use," with the abandonment of that use it no longer serves any useful purpose, is "worthless" to the defendants and should be "cancelled and annulled so as to permit" the plaintiff to extend its building to the full depth of its lot.

The defendants filed a demurrer to the bill on the stated grounds that, (1) the two predecessors in title of the plaintiff and the defendants, for a valuable consideration, by a writing under seal, duly recorded, made a covenant running with the land and thereby "established a perpetual easement of light, air and view, and a perpetual easement for drainage" for the benefit of the land of the defendants over that of the plaintiff, which has not been extinguished; (2) the parties to the deed "thereby established a party wall agreement that the wall common to both buildings, so far as the building on the land" of the plaintiff extends back, "shall forever stand each to the other as they now do," thereby restricting the building on the plaintiff's property to the area then occupied by it; (3) the defendants own

a vested property interest in the land of the plaintiff and to grant the prayer of the bill would "constitute the taking of private property for private use, without due process of law." The appeal challenges the action of the lower court in sustaining this demurrer.

Under its assignment of error the plaintiff makes two contentions: (1) This being a declaratory judgment proceeding in which the bill alleges that an actual controversy has arisen between the parties concerning their respective rights under the easement, the bill was not subject to demurrer; and (2) In sustaining the demurrer the lower court erred in refusing to hold that the easement in favor of the defendants' property over that of the plaintiff "no longer serves any useful purpose" and should be cancelled and annulled.

██ It is true that the general rule is that in an action for a declaratory judgment, if the plaintiff's pleading alleges the existence of an actual or justiciable controversy it states a cause of action and is not demurrable. 26 C. J. S., Declaratory Judgments, § 141, p. 333 *ff.*; Anderson on Declaratory Judgments, 2d Ed., Vol. 1, § 318, p. 740 *ff.*; *Yukon Pocahontas Coal Co.* v. *Ratliff*, 175 Va. 366, 8 S. E. 2d 303.

But this does not mean that a demurrer will never lie to a plaintiff's pleading in a declaratory judgment proceeding. As is said in 26 C. J. S., Declaratory Judgments, § 141, p. 335, "[W]here the allegations of the complaint not only fail to show a right to executory relief, but also fail to show a right to declaratory relief, there is no reason why a demurrer should not be interposed; and where it is plain on the record that there is no basis for declaratory relief, a demurrer is properly sustained." See also, 16 Am. Jur., Declaratory Judgments, § 64, 1959 Cum. Supp., pp. 81, 82; *Bird* v. *Plunkett*, 139 Conn. 491, 95 A. 2d 71, 36 A. L. R. 2d 951; *Paron* v. *Shakopee*, 226 Minn. 222, 32 N. W. 2d 603, 2 A. L. R. 2d 1227; *Moss v. Moss*, 20 Cal. 2d 640, 128 P. 2d 526, 141 A. L. R. 1422.

In *Bird* v. *Plunkett, supra,* there was an action for a declaratory judgment against a husband to determine whether he, having killed his wife, could take under her will. The lower court sustained a demurrer to the bill and held that under the language of the statute involved the husband was not barred. In affirming the decree the appellate court said: "Inasmuch as all the facts alleged in the complaint as amended stood admitted upon the demurrer, the case presented a pure question of law for determination. Since the prayers for relief, predicated upon these facts, sought not only a declaratory judgment but also affirmative and coercive relief, the demurrer was

properly addressed to the complaint on the ground stated." 95 A. 2d, at page 77.

What was said in *Bird* v. *Plunkett, supra,* is particularly applicable to the present case. Here the plaintiff not only alleged that an actual controversy had arisen between the parties concerning their rights under the terms of the deed, but prayed that the easement created in favor of the defendants' property over the plaintiff's property "be cancelled and annulled," and that the plaintiff be "permitted to construct its building over the entire area of its said lot." When the demurrer challenged the right of the plaintiff to this relief, the case was before the lower court on its merits and it was entirely proper that it be finally disposed of. Consequently, if the lower court has correctly decided the case on the merits, it would be quite useless to say now that the demurrer should be overruled and the case remanded for a mere declaratory judgment as to what the rights of the parties are.

On the merits the plaintiff alleges the existence of the easement, created for the benefit of the defendants' property, but argues that it was created "for the particular purpose of adapting the upper floors of the [defendants'] property to residential use," and since the property is no longer used for that purpose the easement "no longer serves any useful purpose" and should be "cancelled and annulled." In support of its position the plaintiff relies on *American Oil Co.* v. *Leaman,* 199 Va. 637, 101 S. E. 2d 540. In that case Leaman, in common with others, owned an easement in a road which led across the property of American Oil Company to a public highway. With the legal abandonment of the public highway and the opening of another giving access to the plaintiff's property, the road through the oil company's property became a short dead-end road serving no purpose. We held that the limited purpose of the easement, which was to reach the public highway, having ceased, the easement was extinguished.

In the present case the easement was not created for a limited purpose. Whether there has been a cessation of its purpose turns upon the intent of the parties as expressed in the deed. 17A Am. Jur., Easements, § 114, pp. 721, 722. Here the easement granted by the plaintiff's predecessor in title was in broad terms and clear and unambiguous. McCorkle agreed for "himself, his heirs &c, never to erect" in the rear of his building "on the vacant space of ground now there" any buildings or improvements which would in any manner "lessen, obstruct, impede or hinder the flow or use of light

now enjoyed by said Boyd from that direction—or which will in the remotest degree darken his lights, apertures and windows, in that part of" Boyd's house then occupied as a family residence.

Under the broad language of the deed the easement was for the benefit of the Boyd property whether it be used for residential or business purposes, or both. The reference in the covenant to the Boyd property as being "now occupied as a family residence" was merely descriptive of the premises. Earlier in the instrument it was described as "now used as a family residence and store." There is no indication in this language, or elsewhere in the deed, that the easement was to be limited to the period during which the property was to be used for residential purposes. On the contrary, the covenant by McCorkle that he was "never to erect" on his lot an obstructing building shows the intent to create a perpetual easement for the benefit of the Boyd property.

The fact that at the time of the creation of the easement a part of the property was used for residential purposes and a part for business purposes and that now the whole is used for the latter purpose does not show a cessation of the purpose of the easement. "By the great weight of authority an easement created by a general grant or reservation, without words limiting it to any particular use of the premises, is not affected by any reasonable change in the use of the premises." 1 Minor on Real Property, 2d Ed., § 107, p. 146, note 2; *Idem*, § 110, p. 149. An unobstructed source of light and air is, of course, beneficial to the use of property for both residential and business purposes.

Nor does the fact that the windows in the defendants' property are not presently used as a source of light amount to an abandonment of the easement. *Watts* v. *Johnson, etc., Corp.*, 105 Va. 519, 525, 54 S. E. 317, 319; *Lindsey* v. *Clark*, 193 Va. 522, 525, 69 S. E. 2d 342, 344.

Moreover, by the terms of the deed, McCorkle further agreed that the rain water which fell on the Boyd property should "continue to fall upon and also be carried off on said McCorkle's ground without hindrance or obstruction." There is no allegation of the cessation of the purpose or abandonment of this valuable easement of drainage.

Inasmuch as the plaintiff's bill does not state a case entitling it to a cancellation or annulment of the easement to which its property is subject, the decree sustaining the demurrer and dismissing the bill is

*Affirmed.*