ROBERT C. HAYES, ET AL.

V.

AQUIA MARINA, INC., ET AL.

Record No. 910874

February 28, 1992

Present: All the Justices

*H. Clark Leming (Leming & Healy,* on briefs), for appellants.
*Andrew J. Ellis, Jr. (George B. Wickham; Harold E. Greer, III; Mays & Valentine,* on brief), for appellees.

JUSTICE STEPHENSON delivered the opinion of the Court.

The principal issue in this appeal is whether an easement across the servient estates will be overburdened by the proposed expanded use of the dominant estate.

Robert C. Hayes and others[1] (collectively, Hayes) brought a chancery suit against Aquia Marina, Inc., Warren E. Gnegy, and Cynthia Gnegy (collectively, Gnegy).[2] Hayes alleged, *inter alia,* that a proposed expansion of a marina located on Gnegy's land (the dominant estate or marina property) would overburden the

---

[1] The other complainants/appellants are Irmgard E. Hayes, Nathan L. Fendig, Charlotte Fendig, G.K. Massie, Jr., Mary Massie, and Jacqueline Davis.

[2] The Board of Supervisors of Stafford County initially was a party defendant but is not a party in this appeal.

easement across Hayes's lands (the servient estates). Hayes, therefore, sought to have the trial court enjoin the proposed expanded use of the dominant estate.

The cause was referred to a commissioner in chancery. Following an *ore tenus* hearing, and after taking a view of the subject properties, the commissioner filed a report containing the following findings: (1) a perpetual easement exists across the servient estates for ingress to and egress from the dominant estate; (2) the easement is not limited solely for domestic use, but may be used commercially by the marina and its customers and by boat owners and their guests; (3) the proposed expansion of the marina from 84 to 280 boat slips is a reasonable use of the dominant estate; (4) the resulting increase in traffic over the easement will not change the type, only the degree, of use and will not overburden the easement; and (5) paving the easement is reasonable and a proper means of maintenance.

By a final decree, entered March 5, 1991, the trial court overruled all of Hayes's exceptions to the commissioner's report and confirmed the report in all respects. Hayes appeals.

We must view the evidence in the light most favorable to Gnegy, the prevailing party at trial. The marina property is a 2.58-acre tract situate on Aquia Creek in Stafford County. The easement is the sole means of land access to the marina property.

The litigants' predecessors in title entered into a written agreement, executed February 3, 1951, for "the establishment of a certain roadway or right of way beginning at the Northern terminus of State Highway No. 666, and terminating at the property division line between [the servient estates], and where [the dominant estate] adjoins the same on the North side thereof" and for "the continuation of said right of way." The agreement recited that "the State Department of Highways will be requested . . . to take over into the State Highway System the present roadway beginning at the North terminus of said State Highway No. 666, and leading through [the servient estates]." The roadway that was intended to be taken into the state highway system was "approximately something less than one-half mile in length." The "newly established private roadway" was "approximately 1,120 feet in length" and "fifteen feet wide along its entire distance." The agreement provided that the parties thereto "shall have an easement of right of way over the entire length [thereof]."

The record indicates that the portion of the easement, beginning at the northern terminus of State Highway No. 666, became a part of the state highway system in 1962. The record also indicates that the "private roadway" is constructed of dirt and gravel.

By 1959, three residential buildings and a wooden pier were located on the dominant estate. The pier was approximately 30 feet long and contained about 10 boat slips. This small marina was operated commercially.

Between 1961 and 1962, the current marina was constructed. This marina has been operated commercially for the general public from 1964 until the present. The marina consists of 84 boat slips, a travel lift station,[3] a public boat launch, and a gas dock. Boats and boat parts are sold at the marina. Boats also are repaired on the marina property.

In September 1989, the Board of Supervisors of Stafford County granted Gnegy a special use permit to expand the marina by increasing the number of boat slips to 280. After the proposed expansion, the marina will continue to provide the same services it has provided since 1964.

There has never been a "traffic problem" with the easement. An expert witness on emergency services testified that there never had been a problem with access to the marina property and none was anticipated if the proposed expansion occurred. On weekends, a time of maximum use of the marina property, Gnegy anticipates that only 20 to 30 percent of the boat owners will make use of the marina.

As a general rule, when an easement is created by grant or reservation and the instrument creating the easement does not limit the use to be made of it, the easement may be used for "any purpose to which the dominant estate may then, or in the future, reasonably be devoted." *Cushman Corporation* v. *Barnes*, 204 Va. 245, 253, 129 S.E.2d 633, 639 (1963). Stated differently, an easement created by a general grant or reservation, without words limiting it to any particular use of the dominant estate, is not affected by any reasonable change in the use of the dominant estate. *Savings Bank* v. *Raphael*, 201 Va. 718, 723, 113 S.E.2d 683, 687 (1960) (citing Ribble, 1 *Minor on Real Property* § 107, at 146 n.2 (2d ed. 1928)). However, no use may be made of the easement which is different from that established at the time of its creation

---

[3] A "travel lift" is a device for moving boats out of the water for repairs.

and which imposes an additional burden upon the servient estate. *Cushman Corporation*, 204 Va. at 253, 129 S.E.2d at 639-40.

Hayes contends that, by using the phrase, "private roadway," in the easement agreement, the parties to the agreement intended to limit the use of the easement to domestic purposes, thereby prohibiting commercial uses.[4] Gnegy contends, on the other hand, that the agreement created an easement for access without limitation. The commissioner and the trial court adopted Gnegy's contention.

■ When the agreement is read as a whole, it is clear that the phrase, "private roadway," was used to distinguish that portion of the easement that would not become a part of the state highway system from that portion of the easement that could be taken into the system. Thus, the phrase is descriptive, not restrictive.

■ Consequently, we hold that the agreement creating the easement for access contains no terms of limitation upon the easement's use. Additionally, the record supports the conclusion that the operation of a marina is a use to which the dominant estate reasonably can be, and has been, devoted.[5]

■ Hayes further contends that the proposed expansion of the marina will impose an additional and unreasonable burden upon the easement. Having alleged that the proposed expansion will impose an additional burden upon the easement, Hayes has the burden of proving this allegation. *Holt* v. *Holt*, 174 Va. 120, 123, 5 S.E.2d 504, 505 (1939).

A contention similar to the one advanced by Hayes was presented in *Cushman Corporation, supra*. In *Cushman Corporation*, as in the present case, the instruments creating the easement contain no language limiting the easement's use. 204 Va. at 253, 129 S.E.2d at 640. When the easement was established, the dominant estate, a 126.67-acre tract, was used as a farm and contained two single-family dwellings with appurtenant servant and tenant houses. *Id.* at 252, 129 S.E.2d at 639. A controversy arose when

---

[4] Hayes also contends that, as a result of this allegedly restrictive language, Gnegy, "at best, acquired a prescriptive easement" for the existing marina. In fact, Hayes endeavors to concede that such a prescriptive easement was established. By making this concession, Hayes, relying upon *McNeil* v. *Kingrey*, 237 Va. 400, 406, 377 S.E.2d 430, 433 (1989), seeks to place on Gnegy the burden of showing that the proposed change in use of the easement imposes no additional burden on the servient estates. We summarily reject Hayes's prescriptive easement theory. The record simply does not support it.

[5] Significantly, Hayes stated in oral argument that Gnegy had a "right to access the present-day marina."

the dominant owner proposed to subdivide the tract for residential and commercial uses. *Id.* at 249, 129 S.E.2d at 637. The trial court limited the easement to its original uses. *Id.* at 247, 129 S.E.2d at 635. We reversed the ruling, stating, *inter alia*:

> The fact that the dominant estate is divided and a portion or portions conveyed away does not, in and of itself, mean that an additional burden is imposed upon the servient estate. The result may be that the *degree* of burden is increased, but that is not sufficient to deny use of the right of way to an owner of a portion so conveyed.

*Id.* at 253, 129 S.E.2d at 640. (Emphasis added.)

■ Here, after weighing the evidence, both the commissioner and the trial court concluded that the proposed expansion would not unreasonably burden the easement. On appeal, a decree confirming a commissioner's report is presumed to be correct and will be affirmed unless plainly wrong. *Bain v. Bain*, 234 Va. 260, 263, 360 S.E.2d 849, 851 (1987); *Seemann v. Seemann*, 233 Va. 290, 293, 355 S.E.2d 884, 886 (1987).

■ In the present case, we cannot say that the trial court's conclusion is plainly wrong. Indeed, we think that it is supported by the evidence and by well-established principles of law. Here, as in *Cushman Corporation*, the proposed expansion will not, "in and of itself," impose an "additional burden" upon the easement, even though the "degree of burden" may be increased. Therefore, assuming, without deciding, that an expanded use of the dominant estate could be of such degree as to impose an additional and unreasonable burden upon an easement, such is not the situation in the present case.

Finally, Hayes contends that Gnegy does not have the right to pave the easement. Hayes acknowledges, and we agree, that the owner of a dominant estate has a *duty* to maintain an easement. *Pettus v. Keeling*, 232 Va. 483, 490, 352 S.E.2d 321, 326 (1987); *Oney v. West Buena Vista Land Co.*, 104 Va. 580, 585, 52 S.E. 343, 344 (1905). However, Hayes reasons that, because the owner of a dominant estate has a duty to maintain an easement, it follows that the owner does not have a *right* to improve the easement. We agree that there is a distinction between maintenance and improvement. *See Montgomery v. Columbia Knoll Condo. Council*, 231 Va. 437, 344 S.E.2d 912 (1986). However, we do

not agree that the owner of a dominant estate does not have the right to make reasonable improvements to an easement.

 Although we previously have not addressed the "improvement" issue, courts in other jurisdictions have held that the owner of a dominant estate has the right to make reasonable improvements to an easement, so long as the improvement does not unreasonably increase the burden upon the servient estate. *See, e.g., Stagman v. Kyhos,* 19 Mass. App. Ct. 590, 476 N.E.2d 257 (1985); *Glenn v. Poole,* 12 Mass. App. Ct. 292, 423 N.E.2d 1030 (1981); *Schmutzer v. Smith,* 679 S.W.2d 453 (Tenn. App. 1984). Such improvement may include paving a roadway. *See, e.g., Stagman, supra; Schmutzer, supra.* Ordinarily, the reasonableness of the improvement is a question of fact. *Guillet v. Livernois,* 297 Mass. 337, 340, 8 N.E.2d 921, 922 (1937). We adopt these principles of law.

 In the present case, the commissioner and the trial court found that the proposed paving of the roadway by Gnegy, under the existing facts and circumstances, is reasonable. We will affirm this finding; it is supported by the evidence and is not plainly wrong.

Accordingly, the trial court's judgment will be

*Affirmed.*