Present:  All the Justices

SHENANDOAH ACRES, INCORPORATED

v.  Record No. 972263

D.M. CONNER, INCORPORATED

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
September 18, 1998

ACRES SAND & STONE, L.L.C.

v.  Record No. 972266

D.M. CONNER, INCORPORATED


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Thomas H. Wood, Judge

In these appeals we consider whether the trial court properly determined that the owner of a non-exclusive easement may limit access to the easement by the servient landowner and its lessee.

Background

Since 1957, D.M. Conner, Incorporated (Conner) and its predecessors have held a mineral interest in the northeastern corner of property owned by Shenandoah Acres, Incorporated (Shenandoah) for the purpose of mining sand and gravel.  In June 1982, by deed of exchange, Shenandoah granted to Conner's principal shareholder and his wife a 50-foot easement from State Route 660 running east along the northern edge of Shenandoah's property to an adjacent parcel owned by the couple in exchange for the release of an existing

right-of-way over Shenandoah's property.  This easement was subsequently transferred to Conner by deed dated March 25, 1987.

Conner constructed and maintains a 30-foot wide, surface-treated road within the easement connecting Conner's mining operations on Shenandoah's property with State Route 660.  These improvements include a locked gate at the point where the road meets the state highway.  Conner's sole current use of its easement is for access from the mining operation on Shenandoah's property to the highway over this road.

In November 1996, Shenandoah decided to terminate its mining agreement with Conner and entered into a lease agreement with Acres Sand & Stone, L.L.C. (Acres Sand), for use of a portion of Shenandoah's property.  The purpose of this lease is to allow Acres Sand to conduct mining operations within the leasehold.  The leasehold area covers approximately 144 acres of Shenandoah's property, including that portion currently being mined by Conner.[*]  The lease further provides that Acres Sand will have use of the same

[*]At the time Shenandoah and Acres Sand entered into this lease, the nature and extent of Conner's interest in Shenandoah's property and its right to continue its mining operation there were in dispute and were already the subject of other litigation.  Pending the resolution of that litigation, Acres Sand is limited by its special use permit to conduct mining operations only on the undisputed portion of its leasehold.  Because Conner's interest in Shenandoah's property and its right to continue mining operations there were not issues in the suits from which these appeals arise, we express no opinion on these issues or the effect of the resolution of that litigation on the issues reviewed in this opinion.

right-of-way between State Route 660 and the leased premises previously granted to Conner. Although Acres Sand had not begun mining operations at the time of trial, it was surveying a portion of the leasehold and making initial preparations to open a mine in an area nearer to Route 660 and west of Conner's mining operations. Acres Sand plans to build a spur road to connect its mine to the road on the right-of-way.

In February 1997, Shenandoah requested that Conner either relocate its gate to a point nearer Conner's mining operations, or permit Shenandoah to have joint control over the gate in its current location. Conner refused these requests. On April 4, 1997, Shenandoah constructed a "loop" from the highway to the road to bypass Conner's gate. Shenandoah secured the loop with a second locked gate. That same day, Conner parked a road grader on the easement road blocking the bypass.

On April 7, 1997, Conner filed a bill of complaint seeking a temporary injunction against Shenandoah and Acres Sand to prohibit their interfering with Conner's use of the easement, tampering with the existing form of the right-of-way, and disturbing the existing security for Conner's mining operations until Conner's property rights in the disputed portion of the leasehold could be determined. On April 9, 1997, Shenandoah and Acres Sand jointly filed a separate bill of complaint seeking an injunction prohibiting Conner from interfering with their use of the easement area.

3

Although not formally consolidated by the trial court, the two suits were considered together in the course of two ore tenus hearings. At those hearings, the parties offered evidence on the current and proposed uses of the easement. Shenandoah indicated that its current use of the easement was limited to checking the property two or three times a week. Acres Sand offered evidence that it planned to begin mining operations within three months, but that its current use of the easement involved only survey and site preparation work. Once mining operations begin, Acres Sand intends to use the easement road to move equipment into its mining area and remove gravel and sand in dump trucks.

Conner offered testimony that continued use of the easement road was necessary for its mining operations on Shenandoah's property. Conner also presented evidence regarding the security requirements of the mining operations imposed by state regulation, and maintained that it was necessary to keep its gate locked during non-business hours. In commenting on the evidence, the chancellor expressed concern that permitting Shenandoah and Acres Sand unlimited access to the easement might compromise the security of Conner's mining operations.

The trial court subsequently entered identical orders in each case in which it found that Conner's easement was not exclusive, and that "[Shenandoah] retained the right to use the easement for any purposes which are not inconsistent with the use of the easement by

[Conner], and conversely, cannot make any use of the easement which is inconsistent with the rights granted to [Conner]." The trial court further ordered that Shenandoah and Acres Sand could use the easement only during Conner's "regular business hours." The orders are silent as to Shenandoah's and Acres Sand's request for injunctive relief. We awarded Shenandoah and Acres Sand these appeals.

## Discussion

We begin by noting that the final orders of the trial court were based on the easement granted by Shenandoah to Conner's principal shareholder and his wife in the 1982 deed and subsequently transferred to Conner in the 1987 deed. We further note that none of the parties assigns error to the trial court's determination that the easement is non-exclusive. Where error is not assigned to the holding of the trial court, that holding becomes the law of the current case and the basis for our decision. Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc., 249 Va. 144, 154, 452 S.E.2d 847, 852 (1995). Accordingly, we will limit our review to the dispositive issue of whether the specific facts of this case would warrant permitting the owner of a non-exclusive easement to restrict the access of the servient landowner and its lessee.

Under well-settled principles, a conveyance of an easement that is non-exclusive does not strip the servient landowner of its right to all use of the land. Walton v. Capital Land, Inc., 252 Va. 324,

5

326, 477 S.E.2d 499, 501 (1996). The servient landowner retains the right to use its property in any manner that does not unreasonably interfere with the lawful dominant use. Id. The servient landowner's right to reasonably use the land includes the right to grant to others additional easements to use the same land so long as the additional uses are not unreasonably burdensome or inconsistent with the existing dominant uses of the easement. Preshlock v. Brenner, 234 Va. 407, 410, 362 S.E.2d 696, 698 (1987).

The party alleging such an unreasonably burdensome or inconsistent use has the burden of proving this allegation. Hayes v. Aquia Marina, Inc., 243 Va. 255, 259, 414 S.E.2d 820, 822 (1992). Any use of a non-exclusive easement may be protected by an injunction prohibiting an interfering use when the harm from the interfering use is irreparable and cannot be adequately addressed in damages. Black & White Cars, Inc. v. Groome Transp., Inc., 247 Va. 426, 431-32, 442 S.E.2d 391, 395 (1994). However, the party seeking relief must show that the alleged harm is imminent, and not merely speculative or potential. See Ridgwell v. Brasco Bay Corp., 254 Va. 458, 462-63, 493 S.E.2d 123, 125 (1997).

Here, Conner failed to show any significant actual conflicting use of the easement by Shenandoah and Acres Sand. Furthermore, any determination regarding the reasonableness of Shenandoah's and Acres Sand's future use of the easement, when such use is not imminent, is necessarily speculative. Similarly, Conner's concerns over

6

potential criminal acts or liability arising from trespassers are, at best, speculative. Accordingly, we hold that Conner did not meet its burden to show that any actual or imminent use by Shenandoah or Acres Sand would irreparably harm or unreasonably interfere with Conner's use of the road within its easement.

The trial court, having determined that Conner's easement is non-exclusive, may not craft an order creating a de facto exclusive easement. Allowing the servient landowner's use of an easement to be limited by Conner's flexible and arbitrary choice, such as its hours of operation, creates just such a de facto exclusive easement and is improper. Rather, any limitation on subsequent uses of the easement should be imposed narrowly and in such a manner as to prohibit only actual material interference with the existing dominant uses of the easement. See generally, Hayes, 243 Va. at 258, 414 S.E.2d at 822.

For these reasons, we will reverse the trial court's judgment in the suit initiated by Conner limiting Shenandoah and Acres Sand to the use of the easement only during Conner's hours of operation and enter final judgment for Shenandoah and Acres Sand. Because the trial court failed to address Shenandoah's and Acres Sand's request for an injunction prohibiting Conner's interference with their use of the easement, we will reverse the judgment in that suit and remand the case for further proceedings consistent with this opinion.

Record Nos. 972263 and 972266  —  <u>Reversed, remanded,</u>
<u>and final judgment</u>.