## CIRCUIT COURT OF FAUQUIER COUNTY

Wallace W. Saunders, Jr.

v.

Douglas C. Coleman et al.

March 30, 2004

Case No. (Chancery) CH02-122

BY JUDGE JEFFREY W. PARKER

This matter comes before the Court as a result of a Motion for Declaratory Judgment filed by the Plaintiff seeking determination of the rights and duties of the various parties in reference to the maintenance of an easement located in the Evergreen Mountain subdivision. The said subdivision for the purposes of this proceeding involves only residential lots 6 through 14, which front upon and are serviced by a private road easement. The Plaintiff owns lots 8 and 9, and the Defendants own the balance of the lots. The remaining five lots of the subdivision front on a public road.

When the subdivision was dedicated, the grantor failed to properly record any covenants relating to the maintenance of the easement, and hence, there are no express provisions on this issue. The deed establishing the easement contains only the following relevant language:

> Such owners desire to and do hereby establish a 50-foot wide easement. ... The owners also reserve the right for themselves, their heirs, devisees, or assigns ... to dedicate at some future time if they so elect the 50-foot wide easement to public road use.

Deed Book 307, Page 34.

Lots 7, 8, and 14 are the lots closest to the public road in this portion of the subdivision. The dispute began when the Plaintiff sought to use his personal equipment to clear cut the property from the edge of the fifty-foot easement up to the gravel road. The owners of lots 7, 8, and 14 objected to this action claiming they preferred the property to remain in its natural state and ejected the Plaintiff's workers and equipment.

It is the Plaintiff's position that proper maintenance of the easement requires the land adjoining the easement to be planted in grass and cleared of all underbrush. The gravel road portion of the easement is approximately sixteen feet in width. Although not specifically pleaded, there was considerable evidence presented at trial regarding rain water flow and how this impacted the easement.

The Plaintiff in his pleading requested *inter alia*, that the Court allow the Plaintiff to "undertake himself, to hire a crew or to contribute to the cost of" cutting the grass along the easement, removing underbrush and rocks, removing tree limbs if they interfere with or endanger vehicles on the easement, and making minor improvements to the easement. He also desired the Court determine his right to obtain an injunction to enforce those established rights.

It was the Plaintiff's position at trial, that proper maintenance of the easement requires substantial ditching alongside the gravel roadway and the placement of numerous metal culverts perpendicular to and parallel with the easement to facilitate water flow. Further, the Plaintiff stated that ingress and egress was restricted without removal of trees and undergrowth along the easement.

The Defendants; Hall, Garrett, and Sanders did not believe that trimming of the trees was necessary for ingress and egress. They allege that the Plaintiff only sought to trim this area back for aesthetic purposes. Defendant Stout, owner of Lot 11, situated across the road from the Plaintiff complained that the Plaintiff had cleared a great deal of natural tree growth and underbrush from his property and its superior elevation caused a considerable amount of rain water to flow down upon her lot. She opposed placing an additional culvert from the Plaintiff's property under the road to her property alleging it would exacerbate an already significant and damaging water flow.

Defendant, Stopper, owner of lot 12, did not oppose the relief sought by the Plaintiff as pleaded nor did Defendant, Taylor, owner of Lot 10, whose lot was located at the farthest end of the easement from the State road.

In this particular subdivision, each party holds both a servient and dominant tenement simultaneously. That is, each owner of a lot has the right to traverse the property of other lot owners while ingressing or egressing their property. Similarly, each party to this law suit is in a position of having their

property traversed by those in a dominant or superior position. As a result, each party could be in the position of asserting the rights and duties of a dominant and servient tenement in this matter.

However, the Plaintiff is only approaching this case from the standpoint of a dominant tenement. As such, the Plaintiff asserts that he has a right and a duty to maintain the easement. See *Hayes v. Aquia Marina, Inc.*, 243 Va. 255 (1992). The Plaintiff could have pleaded that the Defendants as co-dominant tenements also have the right and duty to maintain the easement. However, in paragraph 15 of the Plaintiff's pleading, he stated he was not entitled to a money contribution from the owners.

> A litigant's pleadings are as essential as his proof, and a Court may not award particular relief unless it is substantially in accord with the case asserted in those pleadings.

*Jenkins v. Bay House L.P. Associates*, 266 Va. 39, 43 (2003) (cites omitted).

Similarly, despite the degree of testimony on the culvert issue, this was not mentioned in the pleadings nor was there any relief particularly prayed for in this regard. It can be properly argued in equity that as this case deals with overall maintenance of the easement and that as water erosion causes a need for maintenance, therefore, erosion relief should be granted under the general prayer, despite the fact it was not specifically requested. "The only limitation placed on a grant of general relief is that it not be inconsistent with the case alleged by the bill. . . ." *Johnson v. Buzzard Island Shooting Club*, 232 Va. 32, 36 (1986). Therefore, the Court will consider the culvert issue.

During trial, certain existing culverts were identified. However, existing culverts did not seem to be in controversy. The main culvert controversy was in reference to water flow from lot 9 of the Plaintiff to lot 11 of Stout, which, according to Ms. Stout, would increase an existing nuisance.

In support of his position, the Plaintiff relied upon the evidence of Peter Hitchen, an "expert in private road construction and maintenance" to testify that a culvert located between lots 1 and 9 would preserve the roadway in that area. Although Mr. Hitchen was deemed an expert, his qualifications were minimal at best and his testimony was largely unconvincing. Further, there was evidence that the Plaintiff had increased this particular problem by clearing a portion of his property and increasing the volume of the water run off. Based in part upon the Plaintiff's diagram # 26 submitted into evidence through Mr. Hitchen, it is apparent that the water flow should not be directed from the Plaintiff's property over that of Ms. Stout, but instead along the roadway easement to the east along the property line of the Plaintiff's property toward that of lot 10.

There were numerous photographs placed into evidence which showed the quality of the easement in 1987 during the early stages of the subdivision compared to the quality of the easement now. By and large, there appears to be very little difference as to the overall condition of the road or that the road has been affected by rain run off. Further, the Court, at the request of the parties, conducted a view, walking the entire length of the easement. At that time, there did not appear to be any imminent threat to the road from water flow.

This finding does not mean, of course, that the road does not need to be maintained over time or that ditches running alongside the road would not need to be cleared. However, there appeared to be no compelling need from the Court's review for additional culverts to be placed across the roadway as set forth in the diagram of Mr. Hitchen.

The Plaintiff submitted numerous photographs into evidence among those were pictures taken during an apparent ice storm showing tall trees of thin diameter heavy with ice hanging over the roadway. In good weather, of course, this particular problem did not exist. Regardless, the Court was satisfied through this evidence and the testimony received that, during conditions such as those detected in the photograph, small diameter trees could present a hazard to ingress and egress on the easement. Further, it was agreed by those property owners including lots 7, 8, and 14, that trees less than six inches in diameter along the easement could be trimmed in order to avoid this type of hazard.

Therefore, the Court finds that the Plaintiff does have the right to trim trees within the width of the easement under six inches in diameter which would extend over the roadway during periods of heavy wet snow or ice.

While the Court makes this finding, it is not now going to point out tree by tree which trees fall into this category. This determination would have to be made after careful consideration of the trees along the easement as they would fit this situation.

It is strongly suggested by the Court that, in the event that the Plaintiff wishes to avail himself of this right, he do so in collaboration with the owners of the servient tenement and other owners in order to determine which trees fall into this category and to thus avoid further disputes at a later point in time.

The Plaintiff, in his testimony, conceded that one of the goals of this project was to improve the aesthetics of the roadway. While there is no Virginia case law on this issue regarding private easements, the Supreme Court has held that "a county cannot limit or restrict the use which a person may make of his property … solely on aesthetic considerations." *Board of Sup. James City County v. Rowe*, 216 Va. 128, 145 (1975).

The Court finds that this particular right does not give the Plaintiff the right to grade and plant grass along this easement for aesthetic purposes.

The Court further finds that, consistent with the remarks set forth above, that ditching parallel to the road within the easement is consistent with the right of way maintenance of the easement.

To the extent that any grass grows outside of the ditches, along the untraveled portion of the roadway, the Plaintiff would not have the right to cut this grass without the permission of the landowner. The landowner retains the full use of the property preferred by the dominant estate to the extent not inconsistent with the use of the dominant tenement. *Preshlock v. Brenner*, 234 Va. 407 (1987).

To the extent that the dominant tenement seeks an injunction against the servient estate owners, the Court declines to issue such an injunction absent evidence of non-compliance with the findings set forth within this letter. However, in the event that the Defendants interfere with the Plaintiff's right of removing minor trees that could or would hang over the easement during severe weather, then the Plaintiff may apply for such an injunction. In summary, the rights of Wallace W. Saunders, Jr., as owner of lots 8 and 9 Evergreen Mount Subdivision are declared as follows:

1. To remove all trees six inches in diameter or smaller or tree limbs that could hang over on the roadway during snow or ice.

2. To keep open ditches parallel to the roadway for water drainage.

3. To keep open or replace as needed existing culverts across the roadway or driveways.

4. To make minor improvements to the roadway such as grading and spreading additional gravel.

Further, the Court declines the invitation requested in closing by the Plaintiff to set forth specific standards of maintenance in the future.